STEWART, J.
hThe defendant, Donald Ray Baker, was convicted of two counts of cyberstalking, in violation of La. R.S. 14:40.3. A unanimous jury found him guilty as charged on both counts. He was sentenced to one year in the parish jail for the first count, and to one year in the parish jail, suspended, with two years of supervised probation for the second count. He now appeals, arguing that the evidence was insufficient to convict him of cyberstalking and that his sentences are excessive. For the reasons set forth in this opinion, we affirm the defendant’s convictions and sentences as amended.
FACTS AND PROCEDURAL HISTORY
On April 15, 2008, the defendant was charged with two counts of cyberstalking, in violation of La. R.S. 14:40.3, by bill of *222 information. In the bill, it was alleged that the defendant “repeatedly communicated with Jay Kavanaugh via electronic mail for the purpose of harassment” between November 30, 2005, and March 28, 2007, for count one, and on March 29, 2007, for count two.
The jury trial commenced on February 25, 2013. The following evidence was adduced at trial.
Jay Kavanaugh, the state’s only witness, was an inspector and supervisor in the Criminal Investigation Division of the Ru-sten Police Department at the time of the incident. Kavanaugh testified that he knew the defendant from high school, but that he was not a friend or acquaintance of the defendant’s. Kavanaugh testified that in 2005, Kim Birch, who was previously romantically involved with the defendant, contacted him to |¡,report that the defendant was sending her threatening and harassing e-mails. On October 19, 2005, Ka-vanaugh sent the defendant an e-mail to inform him of La. R.S. 14:40.3 and to advise him not to have any further contact with Birch. The defendant continued to email Birch, and Kavanaugh consequently obtained an arrest warrant for the defendant on November 30, 2005.
The defendant was released on bail, and as a condition of his release, he was ordered not to have any contact with Birch. Soon thereafter, Kavanaugh testified that Ed Hall, a private investigator from Shreveport, contacted him to inform him that the defendant had hired him to conduct surveillance of Birch. Kavanaugh, fearful for Birch’s safety, provoked a motion to revoke the defendant’s bond. The defendant was arrested for violating his bond and held for five days without bond. The cyberstalking charges against the defendant involving Birch were ultimately dismissed per her request.
Kavanaugh testified that after the defendant’s charges involving Birch were dismissed, he received a series of unsolicited e-mails from him. In fact, he received 38 e-mails from the defendant between September 15, 2006, and March 28, 2007, and eight e-mails from the defendant on March 29, 2007. All of these e-mails were sent to Kavanaugh’s e-mail address at work. Ka-vanaugh testified that he only sent one email to the defendant, dated March 29, 2007, in which he told him not to send any more e-mails. That e-mail was sent under the direction of the district attorney’s office.
| .-¡Throughout his testimony, Kavanaugh expressed that the e-mails the defendant sent to him were harassing, threatening, irritating, and insulting based on both the content and the number of e-mails. He stated that he never lied about anything in relation to the defendant, that everything he did in the matter involving Birch was in accordance with the law and in consideration of Birch’s safety, and that he was never disciplined as a result of that matter. Kavanaugh testified that he eventually contacted the state police and asked them to investigate the matter, because he knew that the defendant was “computer savvy.” Kavanaugh was concerned that the defendant was putting things on his computer and making them appear as though he sent them. He also stated that he delayed asking the defendant to stop e-mailing him because he was fearful for Birch’s safety.
On February 26, 2013, the jury found the defendant guilty as charged on both counts of cyberstalking. The trial court ordered a presentence investigation report. On April 30, 2013, the sentencing hearing was held.
The trial court sentenced the defendant to one year in the parish jail for the first count. For the second count, the trial court sentenced the defendant to one year *223 in the parish jail, suspended, with two years of supervised probation. As a condition of the defendant’s probation, the trial court ordered that he perform 30 eight-hour days of court-approved community service, and pay a fine of $2,000.00 plus court costs, or serve six months in the parish jail in default. The trial court stated that the defendant’s probation on count two would commence upon his release from jail on count one, but ordered the sentences to run concurrently.
|4On May 1, 2013, the defendant filed a motion to reconsider sentence. At a hearing that took place on June 21, 2013, the trial court denied the motion and clarified that the defendant’s sentences were to be served consecutively.
The defendant filed the instant appeal, asserting two assignments of error.
LAW AND DISCUSSION

Insufficiency of the Evidence

In the defendant’s first assignment of error, he argues that the evidence was insufficient to support his eyberstalking convictions. He argues that the state failed to prove that his purpose for his correspondence to Kavanaugh was to harass, and that it failed to prove that he continued to e-mail Kavanaugh after being told to cease doing so. More specifically, the defendant argues that pursuant to La. R.S. 14:40.3(B)(1) and La. R.S. 14:40.3(B)(3), his e-mails to Kavanaugh did not contain any false statements and did not threaten harm to anyone or any property.
When issues are raised on appeal, both as to the sufficiency of evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Tate, 2001-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004). This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La.2/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La. App.2d Cir. 1/1-4/09), 1 So.3d 833. On appeal, a reviewing court must view the evidence in the light most favorable to the state and must presume in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence. Jackson, supra.
The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App.2d Cir.2/25/09), 3 So.3d 685, writ denied, 2009-0725 (La.12/11/09), 23 So.3d 913, cert. denied, 561 U.S. 1013, 130 S.Ct. 3472, 177 L.Ed.2d 1068 (2010); State v. Hill, 42,025 (La. App.2d Cir.5/9/07), 956 So.2d 758, writ denied, 2007-1209 (La.12/14/07), 970 So.2d 529.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. Direct evidence provides proof of the existence of a fact, for example, a witness’s testimony that he saw or heard something. State v. Lilly, 468 So.2d 1154 (La.1985). Circumstantial *224 evidence provides proof of collateral facts and circumstances, from which the existence of the main fact may be inferred according to reason and common experience. Id. An appellate court reviewing the sufficiency of evidence in such cases must | (¡resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. State v. Sutton, 486 So.2d 471 (La.1983). When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by the evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, supra; State v. Speed, 48,786 (La.App.2d Cir.1/14/09), 2 So.3d 582, writ denied, 2009-0372 (La.11/6/09), 21 So.3d 299. This is not a separate test that applies instead of a sufficiency of the evidence test when circumstantial evidence forms the basis of the conviction. Id. Rather, all of the evidence, both direct and circumstantial, must be sufficient under Jackson to convince a rational juror that the defendant is guilty beyond a reasonable doubt. Id.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Speed, supra; State v. Allen, 36,180 (La.App.2d Cir.9/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.3/28/03), 840 So.2d 566, 2002-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004). In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Gullette, 43,032 (La. App.2d Cir|2/13/08),7 975 So.2d 753; State v. Burd, 40,480 (La.App.2d Cir.1/27/06), 921 So.2d 219, writ denied, 2006-1083 (La.11/9/06), 941 So.2d 35.
The fact finder is charged -with making a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness; thus, the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Eason, supra; State v. Casey, 99-0023 (La.01/26/00), 775 So.2d 1022, cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000). Such testimony alone is sufficient even where the state does not introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant. State v. Robinson, 36,147 (La. App.2d Cir.12/11/02), 833 So.2d 1207; State v. Ponsell, 33,543 (La.App.2d Cir.8/23/00), 766 So.2d 678, writ denied, 2000-2726 (La.10/12/01), 799 So.2d 490.
La. R.S. 14:40.3, Cyberstalking, provides in pertinent part:
A. For the purposes of this Section, the following words shall have the following meanings:
(1) “Electronic communication” means any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature, transmitted in whole or in part by wire, radio, computer, electromagnetic, photoelectric, or photo-optical system.
(2) “Electronic mail” means the transmission of information or communication by the use of the Internet, a computer, a facsimile machine, a pager, a cellular telephone, a video recorder, or other electronic means sent to a person identified by a unique address or address number and received by that person.
B. Cyberstalking is action of any person to accomplish any of the following:
*225 la(l) Use in electronic mail or electronic communication of any words or electronic communication of any words or language threatening to inflict bodily harm to any person or to such person’s child, sibling, spouse, or dependent, or physical injury to the property of any person, or for the purpose of extorting money or other things of value from any person.
(2) Electronically mail or electronically communicate to another person repeatedly, whether or not conversation ensues, for the purpose of threatening, terrifying, or harassing any person.
(3) Electronically mail or electronically communicate to another and to knowingly make any false statement concerning death, injury, illness, disfigurement, indecent conduct, or criminal conduct, of the person electronically mailed or of any member of the person’s family or household with intent to threaten, terrify, or harass.
(4) Knowingly permit an electronic communication device under the person’s control to be used for the taking of an action in Paragraph (1), (2), or (3) of this Subsection.
Specific intent is the state of mind that exists when circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Specific intent need not be proven as fact; it may be inferred from the circumstances surrounding the offense and the conduct of the defendant. State v. Allen, 41,548 (La. App.2d Cir.11/15/06), 942 So.2d 1244, writ denied, 2007-0530 (La.12/07/07), 969 So.2d 619. The determination of whether the requisite intent is present in a criminal case is for the trier of fact. State v. Hill, 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758, writ denied, 2007-1209 (La.12/14/07), 970 So.2d 529.
In the case sub judice, there is no dispute that the defendant sent the e-mails to Kavanaugh. Over an eight-month period the defendant sent him |946 e-mails. After a careful review of the record, it is clear that the defendant sent Kavanaugh these e-mails for no reason other than to harass him.
The defendant asserts that he was seeking “dialogue” with the police officer responsible for his spending five days in jail. He admits that there were phrases in some of the e-mails which, if taken out of context, could be construed as threats. However, he believes that when the phrases are taken in context, it is evident that those phrases are meant in a sarcastic and mocking tone and should not have been taken literally or seriously. He also denied that any of the e-mails contained any false statements meant to threaten, terrify, or harass Kavanaugh. Since the evidence reveals otherwise, we disagree with the defendant’s assertions.
In the e-mails, the defendant accused Kavanaugh of lying during his investigation of the matter involving Kim Birch and told Kavanaugh that he was filing a complaint against him. The defendant used profane language in these e-mails, often calling Kavanaugh offensive and derogatory names and making insulting comments regarding Kavanaugh’s weight, appearance, sexual preference, intelligence, and professional competence. Even if the defendant was seeking “dialogue,” the manner in which he chose to seek it was inappropriate and constituted harassment. Some excerpts from the numerous e-mails that demonstrate the foul and demeaning language used to harass Kavanaugh include:
Grow up. Lose considerable weight. Make us puke when you don’t. Learn to be a professional. And if you don’t get *226 off my back you won’t like the circumstances.
You’re acting as an ignorant local retard.
F — k you Jay. You adolescent piece of s — t.
JjThis matter is going to be even bigger than your custom-made underwear. Do you buy sheets and then have your Mama fashion?
How much do you pay a hooker to even wipe your a — s?
Word up jay. Keep f — king with me. You’ll lose. Guaranteed.
The testimony and evidence presented at trial, when viewed pursuant to the Jackson standard in the light most favorable to the prosecution, was sufficient to support the cyberstalking convictions. The high volume of e-mails alone constitutes harassment. Further, the insulting, degrading, and arguably threatening nature of the emails, and the defendant’s motive further support the convictions. As the trier of fact, the jury had the discretion to accept or reject all or part of any testimony, to decide how much weight to give to a witness’s testimony, and to determine what is credible and what is not credible while performing its duty and reaching its conclusions. State v. Adams, 49,053 (La. App.2d Cir.5/14/14), 139 So.3d 1106. This evidence was sufficient for the jury to infer, as they did, that the defendant sent the e-mails, both before and after Kava-naugh instructed him to stop, intentionally for the purpose of harassing Kavanaugh. Furthermore, the state has proven the essential elements of the crime of cyber-stalking beyond a reasonable doubt. A thorough review of the evidence does not support the defendant’s position that the state failed to prove that the purpose of his correspondence to Kavanaugh was to harass him.
Therefore, this assignment of error is without merit.
| riExcessiveness of the Sentence
Arguing that his sentence is excessive in his second assignment, the defendant asserts that he is “hardly the worst of offenders and this is far from the worst of offenses.” He further argues that the consecutive nature of the sentences was unconstitutionally harsh and excessive.
The test for reviewing an excessive sentence claim is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Lathan, 41,855 (La.App.2d Cir.2/28/07), 953 So.2d 890, writ denied, 2007-0805 (La.3/28/08), 978 So.2d 297. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. The important elements which should be considered include the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense, and the likelihood of rehabilitation. State v. Haley, 38,258 (La.App.2d Cir.4/22/04), 873 So.2d 747, writ denied, 2004-2606 (La.6/24/05), 904 So.2d 728. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Swayzer, 43,-350 (La.App.2d Cir.8/13/08), 989 So.2d 267. There is no requirement that specific matters be given any particular weight at 112sentencing. State v. Shumaker, 41,547 (La.App.2d Cir.12/13/06), 945 So.2d 277, *227 unit denied, 2007-0144 (La.9/28/07), 964 So.2d 351.
Second, a sentence violates La. Const. Art. I, § 20 if it is grossly disproportionate to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 2001-2574 (La.1/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La.1993). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 2001-0467 (La.1/15/02), 805 So.2d 166; State v. Lobato, 603 So.2d 739 (La.1992); State v. Robinson, 40,983 (La.App.2d Cir.1/24/07), 948 So.2d 379.
A trial court has broad discretion to sentence within the statutory limits. Absent a showing of manifest abuse of that discretion, an appellate court may not set aside a sentence as excessive. State v. Guzman, 99-1528, 99-1753 (La.5/16/00), 769 So.2d 1158; State v. June, 38,440 (La. App.2d Cir.5/12/04), 873 So.2d 939.
As a general rule, maximum or near maximum sentences are reserved for the worst offenders and the worst offenses. State v. Cozzetto, 2007-2031 (La.2/15/08), 974 So.2d 665; State v. McKinney, 43,061 (La.App.2d Cir.2/13/08), 976 So.2d 802; State v. Woods, 41,420 (La.App.2d 11/1/06), 942 So.2d 658, writ denied, 2006-2768 (La.6/22/07), 959 So.2d 494, and writ denied, 2006-2781 (La.6/22/07), 959 So.2d 494.
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, 11sthe terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. La. C. Cr. P. art. 883. Concurrent sentences arising out of a single course of conduct are not mandatory. State v. Derry, 516 So.2d 1284 (LaApp. 2d Cir.1987), writ denied, 521 So.2d 1168 (La.1988). It is within the court’s discretion to make sentences consecutive rather than concurrent. State v. Johnson, 42,323 (La.App.2d Cir.8/15/07), 962 So.2d 1126. A judgment directing that sentences arising from a single course of conduct be served consecutively requires particular justification from the evidence or record. When consecutive sentences are imposed, the court shall state the factors considered and its reasons for the consecutive terms. Id. Among the factors to be considered are the defendant’s criminal history, the gravity or dangerousness of the offense, the viciousness of the crimes, the harm done to the victims, whether the defendant poses an unusual risk of danger to the public, the potential for the defendant’s rehabilitation, and whether the defendant has received a benefit from a plea bargain. Id.; State v. Barnett, 46,303 (La.App.2d Cir.5/18/11), 70 So.3d 1, writ denied, 2011-1612 (La.4/13/12), 85 So.3d 1239. The failure to articulate specified reasons for consecutive sentences does not require remand if the record provides an adequate factual basis to support consecutive sentences. See State v. Boudreaux, 41,660 (La.App.2d Cir.12/13/06), 945 So.2d 898, citing State v. Hampton, 38,017 (La.App.2d Cir.1/28/04), 865 So.2d 284, writ denied State ex rel. Hampton v. State, 04-0834 (La.3/11/05), 896 So.2d 57, writ denied, State ex rel. Hargrove v. State, 04-2380 (La.6/3/05), 903 So.2d 452.
La. R.S. 14:40.3(0(1) provides that a person convicted of cyberstalking shall be fined not more than $2,000.00, or imprisoned for not more than one year, or both.
*228 At the defendant’s sentencing hearing, the trial court stated that it had reviewed the presentence investigation report, and that it had reviewed the sentencing guidelines pursuant to La. C. Cr. P. art. 894.1. The trial court reviewed the defendant’s criminal history, and noted that the 59-year-old defendant had recently been convicted of four counts of improper telephone communications. It also stated that there would be an undue risk that the defendant would commit another crime during a period of suspended sentence or probation, that he is in need of correctional treatment in a custodial environment that could be provided most effectively by his commitment to an institution, and that any lesser sentence would deprecate the seriousness of his crime.
The trial court expressed that the defendant’s actions had caused mental harm to several individuals, including Kavanaugh, Birch, and law enforcement personnel. It further labeled the nature of Baker’s actions as humiliating, harassing, embarrassing, painful, and hurtful.
After a careful review of the record, we find that the trial court adequately considered the facts of this case, the information in the presentence investigation report, and the sentencing guidelines set forth in La. C. Cr. P. art. 894.1. Even though the trial court did not specifically | ^provide reasons for ordering that the sentences be served consecutively, we find that the trial court did not abuse its discretion in doing so because the record provides an adequate factual basis to support the imposition of consecutive sentences in this case. See State v. Boudreaux, supra. The facts of this case coupled with the defendant’s propensity to commit crimes similar to the instant offense indicate that the sentence imposed by the trial court does not shock the sense of justice, nor is it disproportionate to the severity of the offense. The sentences imposed were adequately tailored to this defendant and this particular offense. This assignment of error is meritless.

Error Patent Review

We have reviewed the record for error patent, and note that the trial court failed to inform the defendant of the two-year delay for the filing of post-conviction relief pursuant to La. C. Cr. P. art. 930.8(C). The failure to so advise is not grounds to vacate the sentence and remand for resentencing. State v. Cooper, 31,118 (La.App.2d Cir.9/23/98), 718 So.2d 1063, writ denied, 99-0187 (La.5/14/99), 741 So.2d 663. This court hereby notifies the defendant that he has two years from the date that his convictions and sentences have become final under La. C. Cr. P. art. 914 or 922 to file any applications for post conviction relief. State v. Parker, 49,009 (La.App.2d Cir.5/15/14), 141 So.3d 839; State v. McNeil, 42,231 (La.App.2d Cir.6/20/07), 961 So.2d 554.
Additionally, as a condition of his probation, the defendant was ordered to pay a fine of $2,000.00 plus court costs, or in default thereof to |16serve six months in the parish jail. An indigent defendant may not be subjected to imprisonment because he is unable to pay a fine which is part of his sentence. Bearden v. Georgia, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983); State v. Monson, 576 So.2d 517 (La.1991); State v. Kerrigan, 27,846 (La.App.2d Cir.4/3/96), 671 So.2d 1242. A defendant’s claim of indigence in such a situation may be discerned from the record. State v. Taylor, 43,901 (La.App.2d Cir.2/25/09), 3 So.3d 677, writ denied, 2009-0687 (La.12/11/09), 23 So.3d 911; State v. Conway, 604 So.2d 205 (La.App. 2d Cir.1992). The record indicates that the defendant is indigent, as he is represented on appeal by the Louisiana Appel *229 late Project. Therefore, we vacate the portion of the sentence providing for additional jail time in the event of default of payment of the fíne amounting to $2,000, and court costs.
CONCLUSION
For the foregoing reasons, the defendant’s convictions are affirmed. We vacate the portion of the sentence providing for additional jail time in the event of default of payment of the fíne and affirm the sentence as amended.
AFFIRMED AS AMENDED.