Judgment rendered September 27, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,275-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

TYRONE TERRY BRADEN                         Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 372,153

Honorable Donald E. Hathaway, Jr., Judge

* * * * *

PAULA CORLEY MARX                           Counsel for Appellant


JAMES E. STEWART, SR.                       Counsel for Appellee
District Attorney

REBECCA ARMAND EDWARDS
VICTORIA T. WASHINGTON
COURTNEY RAY
Assistant District Attorneys

* * * * *


Before PITMAN, STEPHENS, and THOMPSON, JJ.

**STEPHENS, J.**

This criminal appeal arises out of the First Judicial District Court, Parish of Caddo, State of Louisiana, the Honorable Donald E. Hathaway, Jr., Judge, presiding. Defendant, Tyrone Terry Braden, was convicted by a unanimous jury of second degree battery, a violation of La. R.S. 14:34.1. The trial court imposed a sentence of eight years at hard labor, the maximum sentence under La. R.S. 14:34.1(C). Braden appeals, urging that the State failed to prove beyond a reasonable doubt that he shot the victim, the lineup was improperly admitted into evidence, and the eight-year sentence for second-degree battery is excessive. For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

On December 20, 2019, the defendant, Tyrone Braden, was charged by bill of information with aggravated battery, illegal carrying of weapons while in possession of CDS, and obstruction of justice. Braden waived formal arraignment and entered a plea of not guilty on February 20, 2020. On February 7, 2022, an amended bill was filed charging Braden with aggravated battery. Braden waived formal arraignment and entered a plea of not guilty on that same date. A jury trial was held on May 25, 2022. The evidence at trial included the following.

Kerion Mims testified that, on November 6, 2019, he returned to the home he shared with his girlfriend after spending the day at the fair with his family. Mims stated he lived at the house on Rosenwald Drive in Shreveport, Louisiana, and had lived there for the last two years. Once he dropped off the vehicle for his girlfriend, Mims left the home, located on a cul-de-sac, on foot, and headed to his cousin's house in a nearby neighborhood. Instead of walking around the cul-de-sac, Mims used a trail

that runs between some houses in the area. Mims testified that others who lived in the complex would use the trail to move to and from a nearby store. As he walked along the trail and entered the David Raines Community Center parking lot, an SUV approached Mims from the right side and "pulled up on him."

Once the vehicle stopped, Mims testified that a person in the driver's seat spoke to Mims and asked if he lived in the area; Mims's response was yes. In return, the person in the driver's seat opened the car door and confronted Mims in an aggressive manner, questioning why he was coming down the trail between the houses. Mims indicated that he attempted to defuse the situation by walking away in the direction of his cousin's house. As Mims continued to the sidewalk, he took about ten steps before he was shot in the back of his legs. Mims stated that the shots occurred "kind of quick," and that five to ten seconds passed before he heard the gunshots after he turned around to walk away.

When he heard the gunshots, Mims stated he took off running but glanced over his shoulder and saw the same SUV that had confronted him. He observed that its lights had been turned off and there was a hand over the top of the window in the driver's door. When asked if he saw the gun, Mims responded, "I can say yeah and I can say no, because it was kind of, like, you know, like, oh, and I'm gone." Mims stated that he took cover behind what he thinks was the community center's van nearby. Mims then flagged down off-duty Shreveport Police Officer Terence Washington, who was parked in his cruiser in the apartment complex parking lot across the street from the David Raines parking lot. Mims gave a description of the vehicle to the officer.

2

Once Mims arrived at the hospital for treatment, he spoke with Detective Jonathan Varnell and told the detective that he did not know who shot him. In response to questions from the officer, Mims related that while he did not personally know the man who shot him, he had seen the man outside in the yard a few times prior to the incident. Furthermore, Mims stated the man was tall and had a bald head, a goatee, and a distinctive head shape.

After being questioned by Det. Varnell at the hospital, Mims stated that he later discovered that "Monkey Roy," or Tyrone Braden, was the individual who might have shot him. Mims reported this to detectives. Mims testified that he eventually met with detectives and identified Braden from a photo lineup. The court admitted the photo lineup into evidence over several objections from Braden's counsel, who argued the State failed to lay a proper foundation for introduction of the lineup. Mims testified that he was instructed to pick out the offender from a photo lineup. Officers told him to take his time, not to guess, and that the offender may or may not be included. Ultimately, Mims identified Braden in the lineup.

Mims testified that he had previously been convicted of domestic abuse battery. Despite this conviction, he carried a handgun in his pocket on the night of the incident. However, Mims stated that he did not remove the firearm from his pocket or use it during the shooting. Once he sought cover, Mims removed the handgun from his pocket and put it on the ground next to him. Mims testified that he carried the gun with him because someone had been shot and killed in the area just 30 minutes before he began his walk that night. He also noted that he was concerned for his safety in general because

3

of the area in which he lives. Mims stated that he was unaware he was prohibited by law from possessing a firearm.

Officer Washington also testified at the trial, stating that he was in his patrol unit near the David Raines parking lot when he heard shots fired. He then rolled his window down and heard someone yelling and screaming. Once Ofc. Washington identified where the noise was coming from, he went to David Raines Park, where he found Mims lying on the ground, bleeding, and in pain. Ofc. Washington stated that he also saw the gun nearby, which he moved away from the injured Mims in order to secure it. Ofc. Washington testified the gun, a black, semi-automatic handgun, showed no sign of being fired: it was not warm when he moved it, he could not detect any lead-like odor typically associated with a weapon having been fired, and he did not see any smoke coming from the gun. When questioned about the lighting in the parking lot, Ofc. Washington observed that it was adequate for him to be able to see.

At the conclusion of the trial on May 25, 2022, the jury returned a responsive verdict of second-degree battery, a violation of La. R.S. 14:34.1. On June 22, 2022, Braden filed a motion for post-verdict judgment of acquittal, alleging insufficiency of the evidence to establish him as the shooter. The court denied the motion that same day.

The trial court also sentenced Braden on June 22, 2022. In accordance with La. C. Cr. P. art. 894.1, the court stated that Braden used threats of or actual violence in the commission of the offense; used a dangerous weapon in the commission of the offense; and foreseeably endangered human life by discharging the firearm during the commission of the offense. Furthermore, the court noted Braden's criminal history, which

4

included convictions for aggravated battery, possession with intent to distribute schedule II CDS, and possession of marijuana in Arkansas, as well as possession of schedule I CDS. The court found no mitigating factors and sentenced Braden to serve eight years at hard labor, with credit for time served.[1] The court informed Braden of his right to an appeal and also noted for the record that the instant offense was a crime of violence.

On July 19, 2022, Braden filed a motion to reconsider sentence; this motion was denied on July 22, 2022. Braden filed a *pro se* motion for appeal on August 10, 2022, and counsel filed a motion for appeal on August 18, 2022. The motion for appeal was granted on August 19, 2022.

## DISCUSSION

*Sufficiency of the Evidence*

In his first assignment of error, Braden argues that the State failed to prove beyond a reasonable doubt that he shot Mims. The standard of appellate review for a sufficiency of the evidence claim in a criminal case is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Tate*, 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004). This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder.

---

[1] We note that there was no limitation placed on his eligibility for probation, parole, or suspension of sentence.

5

*State v. Pigford*, 05-0477 (La. 2/22/06), 922 So. 2d 517; *State v. Burch*, 52,247 (La. App. 2 Cir. 11/14/18), 259 So. 3d 1190.

The *Jackson* standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. *State v. Sutton*, 436 So. 2d 471 (La. 1983); *State v. Norman*, 51,258 (La. App. 2 Cir. 5/17/17), 222 So. 3d 96, *writ denied*, 17-1152 (La. 4/20/18), 240 So. 3d 926.

Direct evidence provides proof of the existence of a fact, for example, a witness's testimony that he saw or heard something. *State v. Lilly*, 468 So. 2d 1154 (La. 1985); *State v. Baker*, 49,175 (La. App. 2 Cir. 8/27/14), 148 So. 3d 217. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. *State v. Broome*, 49,004 (La. App. 2 Cir. 4/9/14), 136 So. 3d 979, *writ denied*, 14-0990 (La. 1/16/15), 157 So. 3d 1127. For a case resting essentially upon circumstantial evidence, that evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438; *State v. Christopher*, 50,943 (La. App. 2 Cir. /16/16), 209 So. 3d 255, *writ denied*, 16-2187 (La. 9/6/17), 224 So. 3d 985.

The appellate court does not assess the credibility of witnesses or reweigh evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442;

6

*State v. Walker*, 51,217 (La. App. 2 Cir. 5/17/17), 221 So. 3d 951, *writ denied*, 17-1101 (La. 6/1/18), 243 So. 3d 1064. Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. *State v. Ward*, 50,872 (La. App. 2 Cir. 11/16/16), 209 So. 3d 228, *writ denied*, 17-0164 (La. 9/22/17), 227 So. 3d 827. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. *State v. Hust*, 51,015 (La. App. 2 Cir. 1/11/17), 214 So. 3d 174, *writ denied*, 17-0352 (La. 11/17/17), 229 So. 3d 928. The trier of fact is charged to make a credibility evaluation and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. *State v. Sosa*, 05-0213 (La. 1/19/06), 921 So. 2d 94; *State v. Hust*, s*upra*.

A reviewing court accords great deference to a fact finder's decision to accept or reject the testimony of a witness in whole or in part. *State v. Brown*, 51,352 (La. App. 2 Cir. 5/2/17), 223 So. 3d 88, *writ denied*, 17-1154 (La. 5/11/18), 241 So. 3d 1013. When a defendant challenges both the sufficiency of the evidence to convict and one or more trial errors, the reviewing court first reviews sufficiency, as a failure to satisfy the sufficiency standard will moot the trial errors. *State v. Hearold*, 603 So. 2d 731 (La. 1992); *State v. Patterson*, 50,305 (La. App. 2 Cir. 11/18/15), 184 So. 3d 739, *writ denied*, 15-2333 (La. 3/24/16), 190 So. 3d 1190.

7

La. R.S. 14:34.1(A) states that second degree battery is a battery when the offender intentionally inflicts serious bodily injury; however, this provision shall not apply to a medical provider who has obtained the consent of a patient.

In *State v. Johnston*, 53,981 (La. App. 2 Cir. 9/22/21), 326 So. 3d 970, the defendant argued there was insufficient evidence to prove the defendant was the perpetrator to support his conviction of simple burglary of an inhabited dwelling because of the victim's generic description as well as a lack of DNA or fingerprint evidence. The state argued that the victim's testimony and unwavering identification of the defendant sufficiently established him as the offender. *Id*. at 973-74. Testimony revealed that the length of the encounter allowed the victim to repeatedly question the perpetrator, and the interaction between them was close and physical. *Id*. The victim identified the defendant in a photo lineup "almost immediately" and "without hesitation" about a week after the burglary occurred. *Id*. at 975. The victim also identified the defendant in open court years after the incident occurred. *Id*. Considering the victim's physical encounter with the defendant and the victim's ability to identify the defendant after the incident had occurred, this Court found no reason to overturn the defendant's conviction in light of the jury's finding that the victim's testimony was sufficient to identify the defendant as the burglar. *Id*. at 976.

In the instant case, Mims identified Braden in a photo lineup six days after the shooting and again at trial. When questioned on the stand, Mims stated he was "one hundred percent" sure that Tyrone Braden had shot him. Mims also recounted the verbal exchange he had with Braden when he initiated contact with Mims. Similar to the victim in *State v. Johnston*,

8

*supra*, who gave a generic description of the defendant, Mims identified Braden based on his head shape and goatee. Although Mims testified that the parking lot was dark, Mims stated he could see the driver of the vehicle. Ofc. Washington's testimony regarding the lighting conditions in the parking lot served to corroborate Mims's ability to see the driver.

As evidenced by Braden's conviction, the jury ultimately determined that Mims's testimony was credible, as was that of Ofc. Washington regarding events after the shooting. Given Mims's unwavering identification of Braden as well as Mims's statement about seeing Braden around the neighborhood before the encounter, we find no reason to disturb the fact finder's conclusions. Therefore, this assignment of error is without merit.

*Admissibility of Photographic Lineup*

Next, Braden contends that the trial court erred in admitting the photographic lineup into evidence absent a proper foundation due to noncompliance with La. C. Cr. P. art. 251. Braden argues that the prosecution failed to lay a proper foundation because the officers who conducted the lineup did not testify as to the methods used in compiling the lineup. In response, the State contends that nothing in La. C. Cr. P. art 251 addresses laying a foundation for admission of a photographic lineup. Additionally, the State cites La. C. Cr. P. art. 253(E), which provides that failure to conduct a photographic or live lineup identification procedure in substantial compliance with the policy adopted under this article shall not bar the admission of eyewitness identification testimony.

Having reviewed La. C. Cr. P. arts. 251-253 in their entirety, we find that the plain language of these statutes provides that they govern how

9

lineups are to be prepared and administered–they[2] do not address the foundational requirements for the admissibility of photo lineups as evidence at trial.[3]

Relevant evidence is defined as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. La. C. E. art. 401. All relevant evidence is generally admissible. La. C.E. art. 402. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time. La. C.E. art. 403. Questions of relevancy and admissibility are discretion calls for the trial judge, and determinations regarding relevancy and admissibility should not be overturned absent a clear abuse of discretion. *State v. Bradley*, 53,550 (La. App. 2 Cir. 11/18/20), 307 So. 3d 369.

With regard to foundation, an adequate foundation for a piece of documentary evidence such as a photograph or a photo lineup is laid when it is identified and authenticated. Authentication of a document occurs when evidence is presented that demonstrates the document is what its proponent claims. La. C.E. art. 901(A). Such evidence may include the testimony of a witness with knowledge that a matter is what it is claimed to be. La. C.E. art. 901(B)(1); *State v. Smith*, 430 So. 2d 31 (La. 1983). It suffices if the

---

[2] Article 251 contains the legislative intent for this Title; art. 252 contains the definitions applicable to this Title; and, more specifically, art. 253 delineates the eyewitness identification procedures to be adopted by each government agency.

[3] It is beneficial to establish a foundation for a photo lineup through the testimony of the police officer who prepared and/or showed the lineup to the victim. However, this is not required.

foundation laid establishes that it is more probable than not that the object is one connected with the case. *Id.*

A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness himself. La. C. E. art. 602. A proper foundation for admission into evidence of a photograph is laid when a witness having personal knowledge of the subject depicted by the photograph identifies it. *State v. Bates*, 397 So. 2d 1331 (La.1981); *State v. Lewis*, 478 So. 2d 665 (La. App. 2 Cir. 1985).

In *State v. Anthony*, 347 So. 2d 483 (La. 1977), the defendant made the same argument as Braden in the instant case, urging that the trial court erred in admitting a photograph of a lineup for which a proper foundation had not been laid by the State. Before offering the photograph, the prosecutor asked the witness whether she recognized the photograph, if she received any prompting or suggestions as to selecting a suspect, and if she identified any possible suspects in the photograph. *Id.* at 489-90. The witness answered she recognized the photograph, she received no promptings or suggestions in selection, and she identified two possible suspects. *Id.* The State then offered the photograph into evidence, but the defendant objected on the grounds no foundation existed to show the source and origin of the photograph. *Id.* at 490. The Louisiana Supreme Court determined a sufficient foundation for the photograph's admission was established because the witness identified the photograph depicting the scene she viewed on the date of the lineup. *Id.*

11

Similar to the witness in *Anthony*, in the instant case, Mims testified that the picture fairly and accurately depicted the lineup he was shown, the officers told him to take his time and not to guess, and the officers did not force or coerce him to pick a suspect from the lineup. Mims also described his signature on the bottom of the photograph as well as other markings he made on the lineup. Mims's testimony revealed that he had a personal knowledge of the photograph and the contents of the photograph. As a result, we conclude there was no abuse of the trial court's discretion in its determination that, through Mims's testimony, the State laid the proper foundation for the photographic lineup. Braden's second assignment of error is without merit.

*Excessiveness of Sentence*

In his third assignment of error, Braden urges that the eight-year sentence imposed by the trial judge, which is the maximum penalty for second degree battery, is excessive by constitutional standards. In support, Braden suggests that the court failed to comply with La. C. Cr. P. art. 894.1 because it found no mitigating circumstances. Braden contends the trial court had no proper insight into Braden's personal history because no presentence investigation ("PSI") report was ordered. According to Braden, a PSI report would have shed light on relevant factors for consideration in sentencing. Furthermore, Braden alleges that he is not the "worst kind of offender," and this is not the most serious violation of Louisiana's second-degree battery statute.

In response, the State contends that the record reflects compliance with La. C. Cr. P. art. 894.1, and Braden is neither entitled to a PSI report nor is the court required to order one. In support of the trial court's

compliance with La. C. Cr. P. art. 894.1, the State points to its consideration of Braden's criminal history as well as his use of threats or actual violence in commission of the offense.

In reviewing a sentence for excessiveness, an appellate court uses a two-step process. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. *State v. Bell*, 53,712 (La. App. 2 Cir. 1/13/21), 310 So. 3d 307; *State v. Kelly*, 52,731 (La. App. 2 Cir. 6/26/19), 277 So. 3d 855, *writ denied*, 19-01845 (La. 6/3/20), 296 So. 3d 1071. The trial court is not required to list every aggravating or mitigating circumstance so long as the record reflects that it adequately considered the guidelines of the article. *State v. Smith*, 433 So. 2d 688 (La. 1983); *State v. Bell*, *supra*; *State v. Kelly*, *supra*.

Second, the court must determine whether the sentence is constitutionally excessive. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the severity of the crime or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Dorthey*, 623 So. 2d 1276 (La. 1993); *State v. Bell*, *supra*. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166; *State v. Bell*, *supra*.

The trial court has wide discretion in the imposition of sentences within the statutory limits, and such sentences should not be set aside as excessive in the absence of a manifest abuse of that discretion. *State v. Williams*, 03-3514 (La. 12/13/04), 893 So. 2d 7; *State v. Bell*, *supra*. A trial

judge is in the best position to consider the aggravating and mitigating circumstances of a particular case and, therefore, is given broad discretion in sentencing. *Id.*; *State v. Allen*, 49,642 (La. App. 2 Cir. 2/26/15), 162 So. 3d 519, *writ denied*, 15-0608 (La. 1/25/16), 184 So. 3d 1289. On review, the appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. *State v. Bell*, *supra*; *State v. Kelly*, *supra*.

A PSI report is an aid to help the court, not a right of the defendant, and the court is not required to order a PSI. La. C. Cr. P. art. 875; *State v. Houston*, 50,126 (La. App. 2 Cir. 11/18/15), 181 So. 3d 188. La. R.S. 14:34.1(C) provides:

> Whoever commits the crime of second degree battery shall be fined not more than two thousand dollars or imprisoned, with or without hard labor, for not more than eight years, or both. At least eighteen months of the sentence imposed shall be served without benefit of parole, probation, or suspension of sentence if the offender knew or should have known that the victim is an active member of the United States Armed Forces or is a disabled veteran and the second degree battery was committed because of that status.

In giving reasons in support of Braden's sentence, the trial court opined that there was an undue risk that, during the period of a suspended sentence or probation, Braden would commit another offense as well, and noted a lesser sentence would deprecate the seriousness of Braden's crime. Similarly, the court stated that Braden needed correctional treatment or a custodial environment that can be provided most effectively by his commitment to an institution. The trial court found no mitigating circumstances applied, but articulated the following aggravating circumstances in determining what sentence to impose:

1) Braden used threats of or actual violence in the commission of the offense;
2) Braden used a dangerous weapon in the commission of the offense;
3) Braden foreseeably endangered human life by discharging a firearm during the commission of an offense which has as an element the use, attempted use, or threatened use of physical force against the person or property of another and which by its very nature involves a substantial risk that physical force may be used in the course of committing the offense; and
4) Braden used a firearm or other dangerous weapon while committing or attempting to commit an offense which has as an element the use, attempted use, or threatened use of physical force against the person or property of another and by which its very nature involves a substantial risk that physical force may be used in the course of committing the offense.

The trial court also noted Braden's convictions of aggravated battery in 1993; possession with intent to distribute CDS II in the early 2000s; possession of marijuana in Washington County, Arkansas, in 2006; and possession of CDS I in 2012.

The record reflects that the trial court adequately complied with La. C. Cr. P. art. 894.1 when sentencing Braden. The court discussed the facts of the case and cited the factors it specifically considered before imposing the eight-year hard labor sentence. According to the record, the trial court exercised its discretion in finding no mitigating circumstances, and the law does not entitle Braden to a PSI report. As such, the first inquiry in determining whether a sentence is excessive is satisfied.

The second step in reviewing a sentence or excessiveness is a determination of whether the sentence is unconstitutionally excessive. The trial court sentenced Braden to eight years at hard labor as a result of his conviction of second-degree battery. We find that this eight-year sentence, as noted above, although the maximum, is within the statutory range and is not unconstitutionally excessive. The instant offense was a senseless crime of violence—Braden fired shots at and wounded the victim in both of his

15

legs, all over Mims's choice to use a shortcut to get to his cousin's house. Given these facts, Braden's sentence is neither grossly out of proportion to the severity of the crime nor a purposeless and needless infliction of pain and suffering. La. Const. art. I, § 20; *State v. Dorthey*, *supra*; *State v. Bell*, *supra*. As such, we cannot say that this eight-year sentence shocks the sense of justice. Accordingly, this assignment of error is without merit.

## CONCLUSION

For the reasons expressed above, the conviction and sentence of the defendant, Tyrone Terry Braden, are affirmed.

**AFFIRMED.**