Judgment rendered February 26, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,183-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

JEREMY D. RAINEY                            Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 382,184

Honorable Erin Leigh Waddell Garrett, Judge

* * * * *

LOUISIANA APPELLATE PROJECT            Counsel for Appellant
By: Douglas Lee Harville

JAMES E. STEWART, SR.                  Counsel for Appellee
District Attorney

ERICA N. JEFFERSON
ROSS STEWART OWEN
ERIC MATTHEW WHITEHEAD
Assistant District Attorneys

* * * * *

Before STONE, HUNTER, and ELLENDER, JJ.

**STONE, J.**

This appeal arises from the First Judicial District Court, the Honorable Erin L. Garrett presiding. After a jury trial, Jeremy D. Rainey (the "defendant") was convicted of: (1) possession of a schedule I controlled dangerous substance ("CDS") with intent to distribute (two counts); (2) possession of schedule II CDS with intent to distribute; (3) contemporaneous possession of a firearm and CDS; and (4) illegal possession of a firearm as a convicted felon. The trial court imposed concurrent sentences on the defendant, the longest of which is 15 years of incarceration at hard labor. In this appeal, he challenges the sufficiency of the evidence as to the firearm convictions.[1] He argues that the state failed to prove he had knowledge of the presence of the firearms in his vehicle because he was intoxicated and his brother had left them there "at most…hours" before the arrest. For the reasons stated herein, we affirm the defendant's conviction and sentence.

## FACTS

The defendant was arrested around 6:00 a.m. on April 5, 2021, at the intersection of Hearne Avenue and Murphy Street in Shreveport, Louisiana. Officer Anthony Visciotti ("Ofr. Visciotti") observed that the defendant's vehicle was idle at a traffic light for at least ten minutes and blocking a city bus while the traffic light was green; the dashcam in his unit recorded some video and virtually all of the sound during the encounter. From his police unit, Ofr. Visciotti shined a flashlight into the vehicle and saw the defendant

---

[1] These convictions were previously vacated in an earlier appeal because the trial court had failed to rule on a post-judgment motion for acquittal. *State v. Rainey*, 55,216 (La. App. 2 Cir. 5/3/23) 2023 WL 3214914. On remand, the trial court denied that motion, reinstated the convictions pursuant to the jury verdict, and re-sentenced the defendant. The instant appeal followed.

apparently sleeping slumped over in the driver's seat.[2] In further attempt to wake the defendant, Ofr. Visciotti pulled his vehicle as close to the defendant's vehicle as possible and sounded his siren--but got no response. Thereafter he approached the vehicle on foot and found the defendant quite asleep at the wheel with loud music playing. The vehicle's transmission was in drive and only the defendant's foot on the brake kept the vehicle from rolling. A loaded AR-15 rifle was wedged between the defendant's right leg and the center console. Ofr. Visciotti also saw a bottle in a brown paper bag "consistent with liquor packaging" in front of the center console, and approximately a gram of marijuana on top of the console. Ofr. Visciotti admittedly suspected that the defendant was intoxicated at this point.[3] The officer rapped on the window for 30 seconds or so before the defendant finally awakened. In his testimony, the officer described the defendant as "discombobulated," disoriented," "confused" and had "slurred speech" to the point "he could barely talk."[4]

During this initial conversation, the defendant stated to the officer that there were no other guns in the vehicle, despite a loaded 9mm handgun resting right next to him on the center console; the officer noticed it while the defendant was looking for his vehicle registration. The defendant denied being aware the pistol was in the car at the time he told Ofr. Visciotti there were no other guns, explaining, "I had forgotten, I swear. I'm just waking up." Ofr. Visciotti asked, "Are they [the guns] both yours?" The defendant

---

[2] Officer Visciotti summoned more officers to the scene shortly after arriving.

[3] On cross-examination, he impliedly admitted that it was in fact an alcoholic beverage container.

[4] Nonetheless, at trial, he testified he did *not* suspect the defendant was drunk anymore once the defendant had awakened fully and conversed with him

2

replied, "No, sir, that's my brother's." Officer Visciotti replied, "That's your brother's."[5]

The officer used the defendant's driver's license to learn from a police database that the defendant had a prior felony conviction which prohibited him from possessing firearms. At that point, the defendant was arrested.

Thereafter officers also found in a backpack on the back floorboard of the vehicle assorted narcotics (crack cocaine, powder cocaine, methamphetamine, ecstasy, marijuana), sandwich baggies, two digital scales, a snorting device (or "tooter"), and joint-rolling papers. Some of the drugs were divided into a number of retail-size (or single-serving size) packages. The defendant explained that he was not selling the drugs, but instead, did this to keep himself from overdosing. The officers also found two debit-type cards with the defendant's name on them in the same container as most of the drugs. Additionally, Ofr. Visciotti found approximately $4,300 cash in the pockets of the defendant's clothing. Finally, the officers found loose bullets for an AK-47 rifle in or near the backpack. Ofr. Visciotti explained at trial that these could not be fired from the AR-15 found in the vehicle (because they were a different caliber).

While in the police car, the defendant was quiet during the vast majority of the ride to the police station, but did respond to several questions (post-*Miranda*). Specifically, he admitted that the vehicle is his, but denied responsibility for all contraband in his vehicle. He also stated that

---

[5] According to the officer's police report, the defendant initially admitted the rifle was his, but then switched to saying both it and the handgun were his brother's. In his trial testimony the officer was at first hesitant to affirm this statement (because he had reviewed the dashcam footage before trial); he seemed to have some doubt whether the defendant had actually said that during their initial conversation, but ultimately maintained the statement.

sometimes his girlfriend uses his vehicle but maintained that the contraband was not hers.

At trial, the defendant's brother, Deandre Rainey ("Deandre"), testified that he and the defendant were at a party at a location on Hollywood Avenue in Shreveport the night before. Deandre stated that he lawfully owned the guns, and he had borrowed the defendant's car that night and that he left the guns inside when he returned it to the location of the party; he probably gave the keys to the defendant's girlfriend upon return. On cross-examination, he admitted he did not know that the defendant was drunk. Deandre also stated that he had probably left the pistol *under the passenger seat of the vehicle* (whereas Ofr. Visciotti testified that he saw the pistol sitting on top of the center console; this testimony was consistent with the audio recording). Deandre also admitted he did not have any loose bullets with him on the night in question and thus could not explain why there were loose AK-47 bullets in the vehicle when his brother was arrested. Finally, he admittedly did not inform the police that the guns were his upon learning of his brother's arrest because he feared being arrested himself.

Agent Kevin Harris ("Agt. Harris") of the Caddo Shreveport Narcotics Task Force also testified how the totality of the circumstances indicated that the defendant was involved in selling drugs—as opposed to being a mere user. Relevant to this appeal, Agt. Harris stated that drug dealers often carry firearms for personal protection, especially since they cannot ask police to protect them or their merchandise as they conduct business.

Officer Melanie Johnson, a specialist with the State's Probation and

Parole Department testified that she supervised the defendant for his 2016 conviction of possession of CDS with intent to distribute. She identified certified copies of the minutes, bill of information, and the defendant's prints from that conviction.

## DISCUSSION

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Tate*, 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert. denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004); *State v. Jackson*, 51,575 (La. App. 2 Cir. 9/27/17), 244 So. 3d 764. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. *State in Interest of D.R.*, 50,594 (La. App. 2 Cir. 2/24/16), 188 So.3d 1116, 112; *State v. Pigford*, 05-0477 (La. 2/22/06), 922 So. 2d 517; *State v. Jackson, supra*. The appellate court does not assess the credibility of witnesses or reweigh evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442.

A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. One witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion, provided it does not bear internal contradiction or irreconcilably conflict with physical evidence. *State in Interest of D.R., supra,* at 1120.

We explained the distinction between direct evidence and circumstantial evidence in *State v. Baker*, 49,175 (La. App. 2 Cir. 8/27/14), 148 So. 3d 217, 223–24:

> The *Jackson* standard is applicable in cases involving both direct and circumstantial evidence. Direct evidence provides proof of the existence of a fact, for example, a witness's testimony that he saw or heard something. Circumstantial evidence provides proof of collateral facts and circumstances, from which the existence of the main fact may be inferred according to reason and common experience.

*Id.*

Regarding proof of a crime (or an element of a crime) solely by circumstantial evidence, La. R.S. 15:438 states:

> The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.

*State v. Bridgewater*, 00-1529 (La. 1/15/02), 823 So. 2d 877, 889, *on reh'g* (June 21, 2002) states the following regarding the function of La. R.S. 15:438:

> However, hypotheses of innocence are merely methods for the trier of fact to determine the existence of a reasonable doubt arising from the evidence or lack of evidence. This circumstantial evidence rule is not a separate test from the *Jackson* standard; rather, La. R.S. 15:438 merely provides an evidentiary guideline for the jury when considering circumstantial evidence and facilitates appellate review of whether a rational juror could have found defendant guilty beyond a reasonable doubt.

*Id*. (Internal citations, brackets, and quotation marks omitted).

La. R.S. 14:10 defines and distinguishes specific criminal intent and general criminal intent, as follows:

> Criminal intent may be specific or general:
> (1) Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender

6

actively desired the prescribed criminal consequences to
follow his act or failure to act.
(2) General criminal intent is present whenever there is
specific intent, and also when the circumstances indicate
that the offender, in the ordinary course of human
experience, must have adverted to the prescribed criminal
consequences as reasonably certain to result from his act
or failure to act.

In relevant part, La. R.S. 14:95(E) defines the crime of

contemporaneous possession of a firearm and unlawful possession of a CDS:

> If the offender…possesses…or has under his immediate
> control any firearm…while unlawfully in the possession of
> a controlled dangerous substance[6]…the offender shall be
> fined not more than ten thousand dollars and imprisoned at
> hard labor for not less than five nor more than ten years
> without the benefit of probation, parole, or suspension of
> sentence.

The applicable language of La. R.S. 14:95.1(A) states:
> It is unlawful for any person who has been convicted
> of…any violation of the Uniform Controlled Dangerous
> Substances Law which is a felony…to possess a firearm or
> carry a concealed weapon.

Thus, conviction for violation of La. R.S. 14:95.1(A) requires proof of: (1)

the possession of a firearm; (2) a previous conviction of an enumerated

felony; (3) non-expiration of the 10-year period of limitation; and (4) general

intent to commit the offense.

*State v. Godeaux*, 378 So. 2d 941, 945 (La. 1979), involved a

defendant convicted pursuant to La. R.S. 14:95.1 after an officer found him

intoxicated and sleeping slumped over the steering wheel of his truck in a

convenient store parking lot with a gun sitting on the truck's front seat.  In

rejecting the defendant's argument that he did not know the gun was there

because he was drunk, the Louisiana Supreme Court categorically stated that

---

[6] That is, "except the possession of fourteen grams or less of marijuana." *Id.*

7

voluntary intoxication cannot be a defense to a "general intent" crime, and classified La. R.S. 14:95.1 as such pursuant to La. R.S.14:11.[7]

Our more recent jurisprudence emphasizes the necessity of the defendant's awareness of the gun and affirmative intent to possess it. In *State v. Ball,* 31,515, (La. App. 2 Cir. 12/9/98), 733 So. 2d 1, 3-4, we stated:

> Constructive possession is sufficient to satisfy the first element…Constructive possession occurs when the firearm is subject to a defendant's dominion and control, even if only temporarily…Mere presence in the area where the firearm is found, or mere association with someone else who is in possession of the firearm, does not necessarily establish possession…Moreover, constructive possession contains an element of *awareness,* or knowledge that the firearm is there *and general intent to possess it.* (Emphasis added.)

*Id. Accord*, *State v. Lattin,* 52,127 (La. App. 2d Cir. 9/26/18), 256 So. 3d. 484, 489. Likewise, for illegal carrying of weapons while in possession of CDS in violation of La. R.S. 14:95.1, the state must prove an element of awareness or knowledge that a firearm is present. *State v. Shrader,* 38,327 (La. App. 2 Cir. 8/18/04), 881 So. 2d 147, 151. Furthermore, in *State v. Lane*, 33,059 (La. App. 2 Cir. 3/3/00), 755 So. 2d 368, 371, *writ denied*, 00-1380 (La. 4/20/01), 790 So. 2d 15, we stated that if "the perpetrator has not carried the firearm on his person, the state must show that the defendant's intent amounted to an intent to possess rather than a mere acquiescence to the fact that there was a firearm in his presence."

---

[7] In *State v. Frank,* 549 So. 2d 401,407 (La. App. 3 Cir. 1989), the Louisiana Third Circuit held that the evidence was sufficient to sustain conviction pursuant to La. R.S. 14:95.1 where the defendant was found alone and unconscious in a vehicle that he did not own with a gun next to him on the seat. The court stated that "intoxication is a defense only where: (1) the intoxicated condition was involuntary, and the condition was a direct cause of the commission of the crime; or (2) the intoxication condition precluded the presence of specific criminal intent or of a special knowledge required in a particular crime."

The defendant, in effect, argues that no reasonable juror could find that the evidence proved beyond a reasonable doubt that the defendant knew about and intended to possess: (1) the rifle that was braced between his leg and the center console of the car; or (2) the pistol that was sitting next to him on top of the center console. This is so, he argues, because he was heavily intoxicated, and his brother left the guns in the car without the defendant's knowledge mere hours earlier. This, the defendant contends, is a reasonable hypothesis of innocence not excluded by the prosecution's evidence.

The state counters that: (1) allowing the defendant's voluntary intoxication to operate as a defense would violate *Godeaux*, *supra*; (2) even if such intoxication could operate as a defense, the jury would still have been justified in concluding that, subjectively, the defendant was aware of and intentionally possessed the guns; (3) per the officer's testimony regarding his interaction with the defendant, he was not actually intoxicated; and (4) the defendant was in actual possession of the rifle since his leg was leaning against it.

For purposes of criminal culpability, possession cannot be established without proof beyond a reasonable doubt of the defendant's factual awareness of the thing possessed and affirmative intent to exercise dominion and control over it. Without that state of mind, there is no possession regardless of the particular *reason* a person is unaware of the thing. It is factually *possible* for a person to be so intoxicated that he is in fact unaware of a rifle braced against his leg or a pistol sitting right next to him on the center console of a vehicle. The law cannot disregard that factual possibility, but instead, must give it due relevance.

9

The jury could reasonably infer that the defendant had the two loaded firearms (within his reach as he drove the vehicle) for his personal protection in his drug-trafficking endeavors. His involvement in drug trafficking is well-indicated by the large quantities of drugs and cash the defendant had-- in addition to packaging material and two digital scales and the division of drugs into retail-size individual packages. The defendant's intoxication does not make it irrational to conclude that the evidence proved beyond a reasonable doubt that he was aware of the guns in the car before he fell asleep, i.e., with his leg resting against the AR-15 rifle and the 9mm pistol right next to him on the console. That is especially so since both guns were loaded: as previously explained, such is highly consistent with the cornucopia of drugs (including a number of single-serving/retail-size packages), two digital scales, and $4,300 cash he was carrying. That is especially so *also* because the defendant had apparently driven from Hollywood Avenue to the intersection of Hearne Avenue and Murphy Street. The jury could reasonably infer that the defendant could not have been aware enough to successfully drive that far without also being aware he was resting his leg against a rifle and had a pistol next to him atop the console. Additionally, to convict, the jury did not need to reject the testimony of the defendant's brother that he *owned* the guns and left them in the defendant's car: mere *possession* is sufficient for conviction. Thus, *regardless of whether the defendant was intoxicated or not*, the jury did not err in finding that the evidence proved beyond a reasonable doubt that the defendant was

in fact aware of the guns and intended to exercise dominion and control over them.

## CONCLUSION

The defendant's conviction and sentence are hereby **AFFIRMED**.