MOORE, J.
hThe defendant, Lemerick Vernell Christopher, was indicted in a superseding bill with charges of attempted second degree murder, possession of a firearm by a convicted felon and resisting an officer. A jury convicted as charged on the first two charges. The state dismissed the resisting an officer charge. Christopher was sentenced to 30 years at hard labor without benefit of probation, parole or suspension of sentence on the attempted murder conviction and 15 years at hard labor without benefits on the felony possession of a firearm conviction; the sentences were ordered to be served consecutively. Christopher’s motion to reconsider the sentences was denied. He now appeals, arguing that the evidence was insufficient to sustain the conviction for attempted second degree murder and that his sentences are excessive. For the following reasons, we affirm
FACTS
On September 12, 2014, the victim, Mar-lando Honeycutt, was shot at point blank range in the face and chest by the defendant on the driveway of the Wonderland Daycare Center in Monroe. The incident occurred at 6:30 a.m. while Honeycutt and Shemika Clemmons, formerly the spouse of the defendant and divorced since 2011, were dropping off their children at the daycare. The defendant is the biological father of Shemika’s children who were born during his marriage to Shemika. The *258 victim, Honeycutt, rode in the front passenger side of Shemika’s vehicle.
When Shemika pulled into the daycare driveway, the defendant, who lived in his mother’s house next door, walked out of the carport as Shemika pulled into the driveway. It was not unusual for Christopher to visit with his children while they were being dropped off in the mornings. However, on [ 2this particular day, Shemika was running late and ignored Christopher’s request to bring the children to him.
There was a history of “bad blood” between Christopher and Honeycutt. Honey-cutt told Shemika to take the children into the daycare, and he warned Christopher not to come up to the vehicle. Before entering the daycare, Shemika told Honey-cutt not to go on Christopher’s mother’s property. She testified that she told him: “do not go into that yard because that’s what he wants you to do. He wants you to be on his territory so he can say you overstepped your boundary.”
Honeycutt got out of the vehicle and walked to the edge of the parking lot but did not go onto the grass of the defendant’s mother’s yard. He testified at trial that Christopher called him names, but he denied that he threatened Christopher in any way. According to Honeycutt, Christopher told him, “I’ll be back. I got something for you. And I’ll be right back.” He went inside his mother’s house and returned. He walked up to Honeycutt and pulled a silver and black handgun from behind his back and shot Honeycutt. Ho-neycutt testified: “He pulled the gun and all I heard was my ears ring. And he shot me.” Christopher shot Honeycutt two times, once in the face and once in the chest. Honeycutt described Christopher’s demeanor as agitated, but calm, and testified that he just “pulled a gun out and shot me.”
Shemika had heard the two gunshots and ran outside to find Honeycutt covered in blood. She testified that she saw Christopher in his mother’s yard and that he said to her, “B, I kill you too.” Shemika helped Honeycutt into the building. Ho-neycutt testified that he was hospitalized for two weeks and can only chew on one side. Doctors were unable to remove | ,seither of the bullets; one is lodged in Honeycutt’s jaw and one in his chest. Ho-neycutt also testified that he was unarmed that morning, does not own a gun and would likely not know how to shoot one.
Mya Williams was an eyewitness to the shooting which occurred immediately after she checked-in her two-year-old at the daycare. The prosecutor asked her what happened next, and she responded:
A: When I was walking out of the daycare it was looking like the two were slowing approaching each other. But once they saw me when I was walking out they kind of separated apart. And that’s when Mr. Honeycutt, eh was saying no, no, not in front of her. So I proceeded to my car. And once I got inside of my car, I hadn’t even cranked my car yet, that’s when I heard two shots that Mr. Christopher fired.
Q: Did you see Mr. Christopher with a gun?
A: Yes.
Q: Did you see him produce that gun?
A: Yes.
Q: Where did he produce it from?
A: Out of his back pocket.
Q: How do you know that?
A: I looked at him. Once I got in my car and I looked up I saw him pull the gun from his back pocket.
Q: Okay. And what did he do with it?
A: He shot twice at Mr. Honeycutt.
*259 Mya described Christopher’s demeanor as calm. She farther testified that Honeycutt made no threatening gestures or motions toward Christopher. Mya started her car, drove around the corner and called 911.
Officer Demario Graves, with the Monroe Police Department, testified that he was the third or fourth officer to arrive at the scene. A bystander told Officer Graves “there he go” and directed him between two houses where the defendant had fled. Officer Graves pursued Christopher |4on foot, jumped a gate and saw a silver revolver with a black handle on the ground. He identified the handgun at trial.
Detective Mike Fendall, the lead investigator on the case, took a statement from Christopher in which Christopher admitted to shooting Honeycutt. Det. Fendall testified that there were two spent slugs in the revolver secured by Officer Graves and that the victim was shot twice.
■ Monroe Police Sergeant James Willis testified that he was one of the officers involved in the foot pursuit of Christopher. Sgt. Willis testified that he encountered a resident of one of the houses in the neighborhood who told him that the man he was chasing was in his backyard. Sgt. Willis found Christopher lying halfway underneath a storage building behind the residence. Christopher was arrested without incident.
The only witness called by the defense was Verdell Christopher, the defendant’s brother. Verdell testified that he also lives with his mother. He said he was asleep on the couch on the morning of the shooting and was awakened by a door slamming. He testified that he heard a man say, “you’re not gonna see your fucking kids,” and heard Christopher respond, “hey I ain’t got no business with you.” Verdell stated he looked out of the window, but did not have a clear line of sight because of the tree and bushes. He heard the men arguing and cursing. After the shots, Christopher ran back into the house, and Verdell saw Shemika with the victim yelling for help.
On cross-examination, the prosecution impeached Verdell’s testimony with his prior statement to police officers the morning of the shooting in which he said he heard and saw nothing because he was asleep on the couch and “just woke up.” Verdell insisted that the officer’s report was inaccurate.
IsThe defense rested. Before closing arguments, the defense and state stipulated that Christopher had a prior conviction for aggravated second degree battery which, pursuant to La. R.S. 14:95.1, prohibits Christopher from possessing a firearm. The jury found Christopher guilty of attempted second degree murder and illegal possession of a firearm by a convicted felon.
The presentence investigation (“PSI”) report ordered by the judge indicates that the defendant was previously convicted for aggravated battery in 2012 for shooting Honeycutt, the same victim, in the leg.[1] The trial court considered the PSI report and sentenced Christopher to consecutive sentences of 30 and 15 years, both at hard labor and without benefits. This appeal followed in which Christopher raises two assignments of error.
DISCUSSION
By his first assignment of error, the defendant contends that the evidence was insufficient to support a conviction for at *260 tempted second degree murder. While he admits that he shot Honeycutt, Christopher maintains that the state failed to prove that he had the requisite intent to sustain a conviction for attempted second degree murder. He contends that there is a reasonable theory that-precludes a finding of intent, specifically, that Honeycutt was the aggressor and he was acting out of sudden passion and heat of blood caused by immediate provocation depriving him of his self-control and cool reflection. La. R.S. 14:31(A)(1). Christopher argues that this one reasonable theory should have precluded the jury from finding him guilty of attempted second degree murder.
| nThe standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, 01-1658 (La. 5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Carter, 42,894 (La.App. 2 Cir. 1/9/08), 974 So.2d 181, writ denied, 08-0499 (La. 11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 05-0477 (La. 2/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La.App. 2 Cir. 1/14/09), 1 So.3d 833, writ denied, 2009-0310 (La. 11/6/09), 21 So.3d 297.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La. 1983); State v. Speed, 43,786 (La.App. 2 Cir. 1/14/09), 2 So.3d 582, writ denied, 09-0372 (La. 11/6/09), 21 So.3d 299.
The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La. 10/16/95), 661 So.2d 442. [7A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App. 2 Cir. 2/25/09), 3 So.3d 685, writ denied, 09-0725 (La. 12/11/09), 23 So.3d 913; State v. Hill, 42,025 (La.App. 2 Cir. 5/9/07), 956 So.2d 758, writ denied, 07-1209 (La. 12/14/07), 970 So.2d 529.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Speed, supra; State v. Hill, 47,568 (La.App. 2 Cir. 9/26/12), 106 So.3d 617.
Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). As a state of mind, specific intent need not be proven as a fact, but may be inferred from the circumstances of the offense and the defendant’s actions. State v. Thornton, 47,598 (La.App. 2 Cir. 3/13/13), 111 So.3d 1130. Specific intent to kill or inflict great bodily harm may be inferred from the extent and severity of the victim’s injuries. State v. *261 Murray, 49,418 (La.App. 2 Cir. 1/14/15), 161 So.3d 918.
Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Broome, 49,004 (La.App. 2 Cir. 4/9/14), 136 So.3d 979, writ denied, 14-0990 (La. 1/16/15), 157 So.3d 1127. For a case resting essentially upon circumstantial evidence, that evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438; State v. Gipson, 45,121 (La.App. 2 Cir. 4/14/10), 34 So.3d 1090, writ denied, 10-1019 (La. 11/24/10), 50 So.3d 827; State v. Broome, supra.
Second degree murder is defined in La. R.S. 14:30.1. The statute states, in pertinent part:
A. Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm;
In order to convict a defendant of attempted second degree murder, the state must prove beyond a reasonable doubt that the defendant had the specific intent to kill. State v. Bishop, 01-2548 (La. 1/14/03), 835 So.2d 434; State v. Logan, 45,136 (La.App. 2 Cir. 4/14/10), 34 So.3d 528, writ denied, 10-1099 (La. 11/5/10), 50 So.3d 812. Proof of specific intent to inflict great bodily harm is insufficient. State v. Logan, supra.
Although the state presented eyewitness testimony, which is direct evidence of the events immediately before and including the shooting, there was also circumstantial evidence regarding the state of mind of the defendant. Taken together, the jury concluded that the state proved the elements of second degree murder, including specific intent to kill, beyond a reasonable doubt.
Specific intent may be inferred when a wound is inflicted at close range, such as shooting someone in the head, State v. Boyer, 406 So.2d 143 (La. 1981), or when a firearm is pointed directly at the victim, State v. Procell, 365 So.2d 484 (La. 1978), cert. denied, 441 U.S. 944, 99 S.Ct. 2164, 60 L.Ed.2d 1046 (1979). Other circumstances which may support an inference in such close range shooting cases are evidence of flight to avoid apprehension and a previous acrimonious relationship between the shooter |fland the victim. State v. Davies, 350 So.2d 586 (La. 1977); State v. Mart, 352 So.2d 678 (La. 1977).
Defendant makes two arguments: First, he argues that the jury incorrectly found the element of specific intent because Ho-neycutt provoked him by confronting him and not allowing him to see his children. He alleges that Honeycutt’s contrary testimony was untruthful. Second, defendant contends that he acted “in sudden passion or heat of blood caused by provocation sufficient to deprive an average person of his self-control and cool reflection,” citing La. R.S. 14:31 (A)(1) which defines manslaughter.
As to the first argument the defendant makes, i.e. he was provoked by Ho-neycutt, the only testimony contrary to Honeycutt’s testimony and testimony from other witnesses regarding whether Honey-cutt provoked the defendant came from the defendant’s brother. Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Speed, supra; State v. Hill, supra. In this instance, the jury obviously found Honey-cutt’s testimony and that of the other witnesses to be more credible. As stated above, an appellate court does not assess *262 the credibility of witnesses or reweigh evidence. State v. Smith, supra. We accord great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, supra; State v. Hill, supra.
As to the second argument made by defendant, “ ‘heat of blood’ and ‘sudden passion’ are not elements of the offense of manslaughter, but rather are factors in the nature of mitigating circumstances which may reduce the grade of homicide,” such as second degree murder. State v. Tompkins, 403 So.2d 644 (La. 6/22/1981). The provocation must be sufficient to deprive an average person of his self-control and cool reflection.
After the defendant allegedly called Ho-neycutt some names, he told Honeycutt that he had something for him, and he went into his mother’s house, retrieved a revolver and returned with the weapon concealed in his back pocket. He then walked up to Honeycutt, pulled the revolver from his back pocket and shot Honey-cutt at point blank range in the face and chest. We are aware that the two men had a long-standing acrimonious relationship likely arising from Honeycutt’s relationship defendant’s former wife, Shemika Clemmons. Disputes involving new relationships and children from prior marriages are common and can arouse great passions, but are not an excuse for murder. The record does not support a finding that Honeycutt provoked the defendant and that under the circumstances in this case an average person would be deprived of self-control. Moreover, Christopher fled the scene, discarded the weapon during the chase and attempted to evade apprehension by hiding under a storage building.
After review, we conclude that there was sufficient direct and circumstantial evidence upon which the jury could infer that Christopher had specific intent to kill Ho-neycutt. We also conclude that the jury correctly concluded that that there was no provocation or that any provocation created by the circumstances of the incident was not sufficient to deprive an average person of his self-control and cool reflection such that a lesser conviction of manslaughter was warranted.
This assignment of error is without merit.
By his second, assignment of error, the defendant maintains that consecutive sentences totaling 45 years at hard labor are unconstitutionally [nharsh. The trial court denied Christopher’s motion to reconsider his sentences alleging excessiveness.
The trial court has wide discretion in imposing sentence within minimum and maximum limits allowed by the statute; therefore, a sentence will not be set aside as excessive unless the defendant shows the trial court abused its discretion. State v. Hardy, 39,233 (La.App. 2 Cir. 1/26/05), 892 So.2d 710; State v. Young, 46,575 (La.App. 2 Cir. 9/21/11), 73 So.3d 473, writ denied, 11-2304 (La. 3/9/12), 84 So.3d 550. A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing. State v. Zeigler, 42,661 (La.App. 2 Cir. 10/24/07), 968 So.2d 875. The reviewing court does not determine whether another sentence would have been more appropriate, but whether the trial court abused its discretion. State v. Esque, 46,515 (La.App. 2 Cir. 9/21/11), 73 So.3d 1021, writ denied, 11-2347 (La. 3/9/12), 84 So.3d 551.
An excessive sentence is reviewed by examining whether the trial court adequately considered the guidelines *263 established in La. C. Cr. P. art. 894.1 and whether the sentence is constitutionally excessive. State v. Gardner, 46,688 (La.App. 2 Cir. 11/2/11), 77 So.3d 1052. Where, however, as here, the defendant’s motion to reconsider sentence alleges mere exces-siveness of sentence, on appeal the reviewing court is limited to considering whether the sentence is constitutionally excessive. La. C. Cr. P. art. 881.1; State v. Mims, 619 So.2d 1059 (La. 1993); State v. Boyd, 46,321 (La.App. 2 Cir. 9/21/11), 72 So.3d 952. A review of the sentencing guidelines does not require a listing of every aggravating or mitigating circumstance; the trial court need only articulate a factual basis for the | 12sentence. State v. Cunningham, 46,664 (La.App. 2 Cir. 11/2/11), 77 So.3d 477. The defendant’s personal history and criminal record, as well as the seriousness of the offense, are some of the elements considered, but the trial court is not required to weigh any specific matters over other matters. State v. Moton, 46,607 (La.App. 2 Cir. 9/21/11), 73 So.3d 503, writ denied, 11-2288 (La. 3/30/12), 85 So.3d 113; State v. Caldwell, 46,645 (La.App. 2 Cir. 9/21/11), 74 So.3d 248, writ denied, 11-2348 (La. 4/27/12), 86 So.3d 625.
A sentence violates La. Const. art. I, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La. 1993); State v. Bonanno, 384 So.2d 355 (La. 1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 01-0467 (La. 1/15/02), 805 So.2d 166; State v. Robinson, 40,983 (La.App. 2 Cir. 1/24/07), 948 So.2d 379.
Second degree murder carries a mandatory life sentence. La. R.S. 14:30.1(B). Attempted second degree murder is punishable by 10 to 50 years at hard labor, without benefits, by operation of La. R.S. 14:27(D)(1)(a).
Possession of a firearm by a convicted felon is punishable by 10 to 20 years at hard labor, without benefits, and a mandatory fine of not less than $1,000, nor more than $5,000. La. R.S. 14:95.1(B).
Because Christopher’s motion to reconsider sentence was based only on constitutional excessiveness, this court’s review is limited to that inquiry. Christopher’s sentences of 30 and 15 years at hard labor respectively for |1Rattempted second degree murder and illegal possession of a firearm by a convicted felon are not constitutionally excessive.
At sentencing, the judge began by noting that the 2012 aggravated battery conviction involved the same victim. See fn. 1, supra. The judge then ensured that Christopher understood that his sentencing exposure for both of the convictions was 70 years without benefits. The judge then reviewed Christopher’s extensive criminal history, his previous crimes including violence and drugs, and noted that this was Christopher’s third-felony conviction. The judge emphasized that Honeycutt still has a bullet in his face and a bullet in his chest and suffers physically from his wounds. He noted that Christopher is “luck/’ that Ho-neycutt survived this heinous shooting or Christopher would be facing mandatory life imprisonment for second degree murder. The judge pointed out that there were children in very close proximity to the shooting — even Christopher’s own children.
The judge stated that he considered the mitigating factors, but found them unimpressive. Finding that Christopher was in need of custodial treatment and that any lesser sentence would deprecate the seriousness of the offense, the judge sentenced Christopher to 30 and 15 years at hard labor, without benefits, to be served con *264 secutively. The judge told Christopher that “I am not going to give you another shot at shooting Mr. Honeycutt because you might actually kill him this time, if you had another chance, but you’re not going to get another chance.”
Significantly, throughout sentencing, Christopher attempted to defend his actions, stating again that he was acting in self-defense and that the two were fighting and the gun dropped out of his pants. Finally, after admonishment from the judge, Christopher expressed that he regretted what 114he had done. A total of 45 years hard labor is not disproportionate to the crimes of illegally possessing a firearm and using that firearm to shoot someone in the face and chest at point blank range. The sentences are well within the sentencing range and the sentencing judge’s discretion. The sentences do not shock our sense of justice.
Accordingly, this assignment of error is without merit.
CONCLUSION
For the foregoing reasons, the convictions and sentences of Lemerick Yernell Christopher are affirmed.
CONVICTIONS AND SENTENCES AFFIRMED,

. The state sought to introduce the 2012 aggravated battery as other crimes evidence; however, after a Prieur hearing, the trial judge disallowed the evidence on the finding that it would be too prejudicial to the jury because it involved the same victim.