Judgment rendered February 26, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,106-KA
No. 56,107-KA
No. 56,108-KA
(Consolidated Cases)

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

Versus

KOLBY RESHAAD MOORE                         Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 396,241

Honorable Katherine Clark Dorroh, Judge

* * * * *

KEVIN V. BOSHEA                             Counsel for Appellant

JAMES E. STEWART, SR.                       Counsel for Appellee
District Attorney

KODIE K. SMITH
CHRISTOPHER BOWMAN
TOMMY J. JOHNSON
Assistant District Attorneys

* * * * *

Before STEPHENS, MARCOTTE, and ELLENDER, JJ.

**STEPHENS, J.,**

This criminal appeal arises from the First Judicial District Court, Parish of Caddo, State of Louisiana, the Honorable Katherine C. Dorroh, Judge, presiding.  A unanimous jury found the defendant, Kolby Reshaad Moore, guilty as charged of second degree murder, a violation of La. R.S. 14:30.1.  Moore appeals his conviction, claiming that the jury had insufficient evidence to identify him as one of the individuals involved in the killing of the victim.  For the following reasons, we affirm Moore's conviction.

## FACTS AND PROCEDURAL HISTORY

On August 24, 2020, Kolby Moore and his friend Antone Hollis rented a dark-colored 2020 Chevy Equinox SUV with license plate number 9551482 from Hertz Rental Company.  The return date for the vehicle, indicated on a receipt that was introduced at trial, was August 31, 2020.  In her trial testimony, Ms. Hollis stated that she provided an address and a phone number to the car rental company.  The number she provided was Moore's phone number.  Ms. Hollis indicated that she saw the vehicle on Tuesday, August 25, 2020, when Moore was dropped off at her apartment at Southport Apartments.  On that date, she observed two other individuals in the SUV with Moore.  Moore stayed the night with Ms. Hollis, and they went separate ways sometime between 4:00 p.m. and 5:00 p.m. on Wednesday, August 26, 2020.  Although Ms. Hollis stated that she did not see Moore in person again after he left, she indicated that Moore Facetimed her and her son later that night.

On the evening of Wednesday, August 26, 2020, Justin Townsend was driving east on I-220 in Shreveport, Louisiana.  Townsend explained

that as he was driving his 18-wheeler truck in the righthand lane, he saw a dark-colored four-door sedan pass him and drive into the right lane in front of him. Townsend then heard popping noises, saw glass flying, and watched as someone held a gun outside the window of an SUV. This SUV, which was in the left lane, was traveling alongside the four-door sedan. Townsend testified that he watched as the SUV continued east on I-220, but he pulled over to inspect the four-door sedan and check on any occupants. As he approached the sedan, he observed a young man in the driver's seat. The young man was later identified as Minnion Dewayne Jackson, a senior at Green Oaks High School in Shreveport, Louisiana. According to Townsend, although the man was breathing, he was not moving. Townsend saw visible injuries to the man and called 911 for assistance. Once officers from the Shreveport Police Department arrived, Townsend indicated he gave his statements to them. Townsend related that he couldn't identify any individual from the SUV, and no one ever presented photographs of individuals for Townsend to look at for him to attempt to identify the occupant or occupants of the SUV.

Rodney Jones, a resident of Shreveport, was on his way to his brother's house in Bossier off of Benton Road. Jones stated he was taking his brother supplies in preparation for the approaching hurricane and was on I-220 heading towards Benton Road around 7:00 p.m. While in route, Jones noticed a vehicle approaching at a high rate of speed in his rearview mirror, and after it had passed, Jones saw that the back glass was completely missing from the vehicle. Jones testified that the vehicle was a dark-colored Chevy SUV, but he was unable to identify the driver or any occupants of the vehicle. Jones watched the vehicle take the Benton Road exit off of I-220,

2

and he contacted Shreveport Police Department detectives once he saw news coverage of the shooting the next morning.

Minnion Miller, the victim's father, indicated that his son was on his way home from football practice when the incident took place. Miller stated that his son was transported to Ochsner's Hospital in Shreveport where he was unresponsive. Miller passed away four or five hours after he arrived at the hospital.

Corporal Adam McEntee, a detective in the SPD Violent Crimes Homicide Unit, began working the case. After speaking to family members about the victim's travel route, Corp. McEntee drove the path of the shooting along I-220. Corp. McEntee testified about the camera systems along I-220 and his familiarity with the license plate reader locations along the route. He explained that a license plate reader, which is attached to a telephone, power, or light pole, has the ability to scan license plates as vehicles drive by. Following a search through the scans of license plates, Corp. McEntee and Captain Mack found a photo of a Chevrolet SUV with its back window glass broken. Corp. McEntee also found information on the vehicle and obtained the Hertz rental agreement for the vehicle with Louisiana tag 9551482. Corp. McEntee got a warrant seeking information from OnStar regarding the GPS location of the SUV. Corp. McEntee found the vehicle at Fox Cove Apartments on Pines Road in Shreveport, which was near Moore's residence. Once Corp. McEntee made contact with Moore, the detective recovered an Apple iPhone from Moore and brought him to the Violent Crimes Unit for an interview. Corp. McEntee indicated that prior to questioning, he read Moore his *Miranda* rights, and the form indicated that Moore agreed to waive his rights and give a statement. Corp. McEntee

3

testified that Moore was not under arrest at this point as he wanted to gather more information before obtaining an arrest warrant. Moore told Corp. McEntee that on the evening of the shooting, he was at Southern Classic Chicken on W. 70th Street in Shreveport.

After further investigation and inconsistencies in Moore's statement and Ms. Hollis's statement regarding Moore's whereabouts on the evening of the shooting, Corp. McEntee obtained an arrest warrant for the defendant Kolby Moore on September 4, 2020. Moore ultimately turned himself in on September 8, 2020. On December 17, 2020, a true bill of indictment was filed in open court, charging Kolby Moore with second degree murder in violation of La. R.S. 14:30.1. An amended indictment was filed on July 7, 2023, and a jury trial in this matter commenced on July 10, 2023.

Several individuals testified at trial, including the coroner, Dr. James G. Traylor. Dr. Traylor stated that in August of 2020, he was employed with the LSU Health Sciences Center in the Pathology Department in Shreveport, and he performed the autopsy of the victim. Dr. Traylor informed the court that the victim suffered six gunshot wounds, and three of the shots were penetrating. Dr. Traylor explained that a penetrating shot means that the bullet goes in but does not exit. Dr. Traylor identified three perforating gunshots that went through the victim, and he also indicated a gunshot wound to the victim's head that, in his opinion, was the fatal wound. At the close of his testimony, Dr. Traylor indicated that the manner of death was homicide.

Audra Williams, employed at the University of North Texas Center for Human ID in Fort Worth, Texas, testified as an expert in the forensic analysis of DNA. Ms. Williams testified that in August 2020, she was

4

employed at the North Louisiana Crime Lab in Shreveport. She stated that she tested 28 swabs of DNA, and of those 28 swabs, six resulted in a DNA profile which assisted her in reaching her conclusions in the instant case. Ms. Williams indicated that the DNA profiled from the swabs was consistent with being a mixture from at least three individuals. In her testimony, Ms. Williams stated the following:

> So one of those individuals had more of a DNA profile than the other two contributors, so that means that their DNA profile was more robust. It had higher values, taller peaks. It's kind of like if you put a bunch of NBA players in with a bunch of kindergarteners. You would be able to pick out the NBA players really fast because they're taller, they're bigger, they're just easier to see. So for that I was able to make conclusions, and in this case I was able to say that Kendrick Moore was -- could not be excluded as a major contributor and I was able to put statistics on the major contributor.

Phillip Stout, an expert in the field of forensic firearms analysis and employed at the North Louisiana Crime Lab in Shreveport, analyzed the shell casings and projectiles recovered from the crime scene, the Chevy SUV, and the victim's vehicle. Mr. Stout examined four 7.62 casings and two .40 caliber casings recovered from the crime scene, as well as two .40 caliber casings recovered from the Chevy SUV. When questioned about the four 7.62 casings, Mr. Stout stated that those casings were fired from the same weapon. The two .40 caliber casings recovered from the crime scene were also fired from the same weapon according to Mr. Stout's testimony. However, Mr. Stout indicated that the two .40 caliber casings recovered from the Chevy SUV were not fired from the same weapon but were instead fired from two different weapons. Mr. Stout did testify that one of the .40 caliber casings recovered from the Chevy SUV was fired from the same weapon as the .40 caliber casings recovered from the crime scene.

5

Captain Shannon Mack with the Bossier Parish Sheriff's Office also testified at trial. Capt. Mack indicated that she is over the Digital Forensics, Crime Scene, Property, and Intelligence Departments. Capt. Mack testified that she has special training relating to cell phones and cell phone towers. Although Moore objected to Capt. Mack's qualification as an expert witness, the trial court overruled the objection. Capt. Mack stated that she received and reviewed cell phone records from Verizon Wireless and explained the Cellhawk software and its purposes. Using this technology, Capt. Mack testified that she was able to plot Moore's phone on the evening of the shooting. She demonstrated the use of the software during the trial and plotted Moore's alleged movements using his cell phone number. The information Capt. Mack provided showed that Moore was in the area of the shooting at the time it occurred and then continued eastbound towards the Benton Road exit off of I-220.

At the close of trial on July 13, 2023, the jury found Kolby Moore guilty of the second degree murder of the victim, Minnion Dewayne Jackson. On August 14, 2023, Moore filed a motion for a new trial, arguing that the verdict was contrary to the law and evidence and objecting to the court's ruling on several objections made during the trial. The trial court held a sentencing hearing on August 16, 2023. The trial court heard arguments on Moore's new trial motion, which was denied, then gave its reasons for sentencing before imposing upon Moore the mandatory sentence of life imprisonment without the benefit of probation, parole, or suspension of sentence. In response, Moore filed a motion to reconsider sentence which was denied. On August 16, 2023, Moore filed a motion for post-verdict judgment of acquittal in which he claimed that the evidence viewed in light

6

most favorable to the State did not permit the jury to find him guilty of second degree murder. However, the trial court disagreed and, in its written reasons filed on August 18, 2023, stated that the jury had ample evidence to unanimously convict and therefore denied the motion. Moore now appeals.

### DISCUSSION

Moore argues that the State failed to prove his guilt of second degree murder beyond a reasonable doubt by failing to remove every reasonable hypothesis of innocence. He first contends that the jury's guilty verdict of second degree murder is contrary to the law and the evidence. In his second assignment of error, Moore argues that the trial court erred in denying his motion for new trial. Lastly, he suggests that the trial court erred when it denied his motion for post-verdict judgment of acquittal. He requests that this Court reverse the guilty verdict and grant his motion for post-verdict judgment of acquittal. In the alternative, he asks this Court to grant him a new trial.

Moore asserts that the trial testimony and the circumstantial evidence support his argument that the State failed to remove every reasonable hypothesis of innocence that someone other than him was responsible for the homicide. Moore urges that no one was able to identify and place him in the vehicle allegedly holding the shooters, and no footage from dashboard cameras was recovered to identify the occupants of the vehicle. Moore further points out that the DNA swabs collected point to his cousin, Kendrick Moore, as a major contributor rather than him. He also notes that, although search warrants were executed at two different locations, no evidence was recovered from either that could establish a connection to him. Moore suggests that the State did not prove that he actually did the killing or

that he aided and abetted any killing that happened on the day of the incident.

In response, the State suggests that the pattern of facts introduced into evidence allowed the jury to draw inferences based upon reason and common sense experiences. The State urges that the jury was instructed on circumstantial evidence and the weight and credibility to be given to the testimony of the witnesses as well as the weight and value to be afforded to the statement made by Moore. The State argues that the jury rejected Moore's hypothesis that he was not in the vehicle and did not participate in the shooting as a principal to the homicide. The State suggests that this Court should refrain from impinging on the jury's discretion in light of all of the evidence presented when viewed in light most favorable to the prosecution.

### Sufficiency of the Evidence

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Tate*, 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert. denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004). This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. *State v. Pigford*, 05-0477 (La. 2/22/06), 922 So. 2d 517; *State v. Dotie*, 43,819 (La. App. 2 Cir. 1/14/09), 1 So. 3d 833, *writ denied*, 09-0310 (La. 11/6/09), 21 So. 3d 297.

The *Jackson* standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from circumstantial evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. *State v. Sutton*, 436 So. 2d 471 (La. 1983); *State v. Norman*, 51,258 (La. App. 2 Cir. 5/17/17), 222 So. 3d 96, *writ denied*, 17-1152 (La. 4/20/18), 240 So. 3d 926.

Direct evidence provides proof of the existence of a fact; for example, a witness's testimony that he saw or heard something. *State v. Lilly*, 468 So. 2d 1154 (La. 1985); *State v. Baker*, 49,175 (La. App. 2 Cir. 8/27/14), 148 So. 3d 217. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. *State v. Broome*, 49,004 (La. App. 2 Cir. 4/9/14), 136 So. 3d 979, *writ denied*, 14-0990 (La. 1/16/15), 157 So. 3d 1127.

For a case resting essentially upon circumstantial evidence, that evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438; *State v. Christopher*, 50,943 (La. App. 2 Cir. 11/16/16), 209 So. 3d 255, *writ denied*, 16-2187 (La. 9/6/17), 224 So. 3d 985. The appellate court reviews the evidence in the light most favorable to the prosecution and determines whether an alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. *State v. Calloway*, 07-2306 (La. 1/21/09), 1 So. 3d 417; *State v. Alexander*,

9

53,449, p. 5 (La. App. 2 Cir. 11/18/20), 306 So. 3d 594, 598, *writ denied,* 20-01449 (La. 6/22/22), 339 So. 3d 642; *State v. Garner*, 45,474 (La. App. 2 Cir. 8/18/10), 47 So. 3d 584.

The trier of fact makes credibility determinations and may accept or reject the testimony of any witness. *State v. Casey*, 99-0023 (La. 1/26/00), 775 So. 2d 1022, *cert. denied*, 531 U.S. 840, 121 S. Ct. 104, 148 L. Ed. 2d 62 (2000). The appellate court does not assess credibility or reweigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442; *State v. Green*, 49,741 (La. App. 2 Cir. 4/15/15), 164 So. 3d 331. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. *State v. Jackson*, 53,497 (La. App. 2 Cir. 5/20/20), 296 So. 3d 1156.

Second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1(A)(1).

Although Moore contends that no eyewitness testimony or direct physical evidence places him in the Chevy SUV involved in the shooting, the circumstantial evidence contained in the record supports the jury's finding of Moore's guilt in the murder of the victim. Ms. Hollis's testimony establishes that she rented the Chevy SUV involved in the shooting for Moore's benefit. She also testified that Moore Facetimed her and her son on the evening of the shooting between 7:00 p.m. and 8:00 p.m. using the cellphone that Capt. Mack tracked via the Cellhawk software. While demonstrating the use of the software and plotting Moore's movements, Capt. Mack's testimony clearly established that the Moore's cellphone placed him in the area of the shooting.

10

Moore argues that Capt. Mack's analysis cannot and did not provide an exact location of Moore's alleged cellphone, and he also maintains that he told police that his cousin Kendrick Moore used this cellphone as much as he did. Moore states that this should have been considered in conjunction with the DNA evidence collected from the dashboard of the vehicle and explained in Ms. Willaims' testimony wherein she concluded that the DNA present in the vehicle was a mixture from at least three individuals. However, the testimony contained in the record establishes that Moore's cellphone number was used in the Hertz rental agreement, Moore used this cell phone to Facetime Ms. Hollis, and Moore had this same cell phone on his person when he was detained at his mother's home following the shooting. Furthermore, the Chevy SUV, found merely half a mile from Moore's mother's home, was indicated by detectives to have been *cleaned*. We also find it noteworthy that the vehicle was backed into a parking space, in an apparent attempt to conceal the broken rear window which was identified in Mr. Jones's testimony as well as captured on the camera systems discussed in Corp. McEntee's testimony. Ms. Williams' testimony about three sets of DNA is also consistent with Mr. Stout's testimony indicating that three different firearms were used in the commission of the crime.

Although Moore suggests that the jury was presented with a reasonable hypothesis of innocence, i.e., that Kendrick Moore was driving the vehicle as a principal at the time of the shooting, nothing in the record contradicts the State's assessment that Kolby Moore was present in the vehicle during the shooting. Other than Moore's statements about others using his cell phone or his whereabouts during the shooting being miles

11

away, nothing in the testimony or the evidence suggests that Moore was not in possession of his cell phone and was not present in the vehicle during the shooting. The trier of fact, in this case the jury, heard the testimony and evidence and determined that the testimony and evidence supported that Moore was in the vehicle during drive-by shooting and was guilty of second degree murder. Given the facts, testimony, and evidence before us, we cannot say that the jury erred in its findings. For these reasons, Moore's first assignment of error is without merit.

***Motion for New Trial***

La. C. Cr. P. art. 851 provides, in pertinent part:

A. The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.

B. The court, on motion of the defendant, shall grant a new trial whenever any of the following occur:

1. The verdict is contrary to the law and the evidence.

2. The court's ruling on a written motion, or an objection made during the proceedings, shows prejudicial error.

Neither the appellate nor supervisory jurisdiction of the supreme court may be invoked to review the granting or the refusal to grant a new trial, except for error of law. La. C. Cr. P. art. 858. The decision on a motion for new trial rests within the sound discretion of the trial court. *State v. Roth*, 52,359 (La. App. 2 Cir. 11/14/18), 260 So. 3d 1230, *writ denied*, 18-2059 (La. 6/17/19), 273 So. 3d 1210; *State v. Horne*, 28,327 (La. App. 2 Cir. 8/21/96), 679 So. 2d 953, *writ denied*, 96-2345 (La. 2/21/97), 688 So. 2d 521. The appellate court will not disturb this ruling on appeal absent a clear showing of abuse. *Id*.

As it pertains to Moore's new trial motion under La. C. Cr. P. art. 851(B)(2), he argues that the trial court erred in denying his objections to the relevancy of the photographs of firearms, a magazine, and ammunition taken during the execution of a search warrant at 1004 Quail Creek. Moore suggests that the guns in the photos were not related to the shooting and only served to be inflammatory and prejudicial. He also maintains that the trial court erred in denying his objections to the cell phone ping presentation made by Capt. Mack during her testimony as well as the trial court's acceptance of Capt. Mack as an expert witness.

The State attempted to introduce the photographs in question during Corporal Walsworth's testimony. However, the trial court clearly states on page 415 of the record, "[s]o at this point I'm going to sustain his objection just so the record is clear. He can identify the guns that he retrieved pursuant to that search warrant, but they're not coming in yet." While showing the jury the photographs was tantamount to their introduction into evidence, we find the showing of these photographs to be harmless error and not grounds for the granting of a new trial. Similarly, the trial court did not abuse its discretion in allowing Capt. Mack to show and use the cell phone presentation to demonstrate the Cellhawk software tracking Moore's movements on the night of the shooting, as the presentation itself was never formally introduced into evidence. In qualifying as an expert witness, Capt. Mack was questioned by the trial court and Moore's trial counsel extensively about the software, her experience using the software, and her qualifications as an expert in her field. On these grounds, we find that the trial court properly denied the motion for new trial.

13

In ruling on a motion for new trial brought under La. C. Cr. P. art. 851(B)(1), the trial court's duty is to put itself in the position of a juror. *State v. McKinnies*, 13-1412, p. 10 (La. 10/15/14), 171 So. 3d 861, 869; *State v. Bourg*, 19-00038, p. 5 (La. 12/11/19), 286 So. 3d 1005, 1008-09. A trial court independently assesses credibility and weighs the evidence, and in doing so acts as what is often described as a thirteenth juror. *Id.*, 19-00038, p. 5, 286 So. 3d at 1009. Because Moore is arguing that the evidence was insufficient to convict him, he is essentially requesting a sufficiency review that is more properly considered in a motion for post-verdict judgment of acquittal. *See State v. Hamilton*, 03-1385, pp. 15-16 (La. App. 3 Cir. 3/3/04), 867 So. 2d 151, 160-61, *writ denied sub nom. State ex rel. Hamilton v. State*, 04-1227 (La. 4/22/05), 899 So. 2d 567. As a result, the trial court's ruling on Moore's motion for new trial on this ground was not erroneous, and Moore's second assignment of error is without merit.

### *Motion for Post-Verdict Judgment of Acquittal*

A post-verdict judgment of acquittal shall be granted only if the trial court finds that the evidence, viewed in the light most favorable to the state, does not reasonably permit a finding of guilty. La. C. Cr. P. art. 821(B); *State v. Muse*, 53,345 (La. App. 2 Cir. 9/27/23), 373 So. 3d 88; *State v. McLaughlin*, 54,874 (La. App. 2 Cir. 3/1/23), 357 So. 3d 551. This is a question of legal sufficiency. *Id.* This is similar to the standard for appellate review of sufficiency of the evidence to support a defendant's conviction in that the court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *State v. Brown*, 620 So. 2d 508, 513-514 (La. App. 4 Cir. 1993), *writ denied*, 93-1939 (La. 10/16/93),

625 So. 2d 1062; *see also State v. Hampton*, 98-0331 (La. 4/23/99), 750 So. 2d 867, 880, *cert. denied*, 528 U.S. 1007, 120 S. Ct. 504, 145 L. Ed. 2d 390 (1999); *State v. Nabors*, 52,163 (La. App. 2 Cir. 7/19/18), 251 So. 3d 1214, *writ denied*, 18-1477 (La. 9/21/18), 252 So. 3d 496, and *writ denied*, 19-0567 (La. 5/28/19), 274 So. 3d 560.

Considering the above and having already found that the evidence presented at trial was sufficient for conviction, we find that the trial court did not err in denying Moore's motion for post-verdict judgment of acquittal. Consequently, Moore's third assignment of error is without merit.

## CONCLUSION

Finding no errors patent in our review of the record and for the reasons expressed herein, Kolby Reshaad Moore's conviction for second degree murder is affirmed. The trial court's denials of the motion for new trial and post-verdict judgment acquittal are also affirmed.

**AFFIRMED.**

15